**TRENT et al., Appellants,**

v.

**GERMAN TOWNSHIP BOARD OF ZONING APPEALS, Appellee.**

[Cite as *Trent v. German Twp. Bd. of Zoning Appeals* (2001), 144 Ohio App.3d 7.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 18675.

Decided June 1, 2001.

8

*Gary J. Leppla*, for appellants.

*Victoria E. Wiencksoki*, Montgomery County Assistant Prosecuting Attorney, for appellee.

---

FREDERICK N. YOUNG, Judge.

Lawrence E. Trent and his wife, Bessie L. Trent ("the Trents"), appeal from the decision of the common pleas court that affirmed the decision of the German Township Board of Zoning Appeals denying the Trents their application for a conditional use permit and a variance to allow for building of an additional house in land zoned for agricultural use. Because the decision and opinion of the trial court so thoroughly analyzes the existing state of the law applicable to this matter and the grounds for its decision, we set forth the opinion and decision of Judge John W. Kessler in full, as follows:

"I. FACTS

"This is a zoning matter. Lawrence E. Trent and Bessie L. Trent are the owners of a 17.8-acre parcel of land in Germantown, Ohio. They now appeal a

decision of the German Township Board of Zoning Appeals ('Board') denying them a conditional use permit and a variance to split their parcel in half to accommodate the construction of a new single-family dwelling. The purpose of the property split and new house is to enable the Trents to live closer to their daughter and grandchildren. It is not clear who currently lives on the 17.8-acre property: the Trents, their daughter and grandchildren, or the entire family? Although the Trents are the owners, the facts also indicate that it is they who plan to live in the new home. Additionally, testimony in the Board hearing transcript at page 15 suggests it is the daughter and grandchildren who currently live on the property. In any event, the question does not affect the analysis below.

"The Trent property is rectangular and runs lengthwise between State Route 4 on the west and Eby Road on the east in German Township. The split would run north-south across the width. The house currently situated on the property sits on the State Route 4 half of the property, but Route 4 is not accessible from the property and the house officially fronts Eby Road. The property is situated in what has been zoned an agricultural district. Accordingly, the zoning laws applicable to the property are those applicable to all similarly situated agricultural district properties in German Township. As the district's designation implies, the principal use of designated agricultural properties is agriculture and related uses. The Trents maintain that aside from the part of the property on which the new house would sit, the vast majority of the property would continue to be farmed.

"The properties adjoining the Trents' are of similar dimensions. However, Eby Road is apparently the border of the agricultural district because just across the street exist lots of much smaller dimensions, and which are not primarily agricultural. The Trents requested two things from the Board: 1) upon splitting their lot into two parcels of about 8.89 acres each, approval for constructing a single-family house on the 'new' parcel (the 'conditional use'); and 2) a variance for the new parcel excusing the road frontage requirement vis-a-vis the new house which the Trent's construction plan would otherwise violate.

"Staff investigations were conducted, and reports pursuant thereto were filed by a zoning administrator concerning the respective requests. In both instances, the zoning administrator made no recommendation on whether to approve the respective requests, instead deferring to the judgment of the Board. The Board held a hearing on the matter on May 2, 2000. The Trents were represented at the hearing by counsel. Additionally, one neighbor spoke in support of the requests. Five neighbors spoke out against granting the requests. At the close of the meeting the four members of the five-member Board who were present voted unanimously to deny the requests.

"The Board's primary concern is one of housing density. To wit, the agricultural zoning laws and regulations were enacted to preserve agricultural lands for agricultural uses and to ward off the division of sizeable farmlands into smaller tracts to make room for more housing. The Board did not conclude that the Trents requests were unreasonable, but merely that the 'spirit' of the law requires the existing farmland to remain as is, and that anything short of that, such as splitting the 17.8-acre tract in half to accommodate a new residence, would compromise that spirit.

"The Trents appeal on the ground that the denials were unreasonable and arbitrarily made. They argue that as applied the zoning law effects an unconstitutional denial of due process. They further argue that evidence does not support the Board's decision. In non-legal terms, the Trents believe that what they are requesting is nothing more than to use their land in a reasonable manner that accommodates their desire to live nearer to their daughter and grandchildren, while maintaining the dignity and spirit of their neighborhood and the local zoning regulations by continuing to farm the balance of the impacted land.

"II. LAW AND ANALYSIS

"Although the language of the United States and Ohio Constitutions grants an inviolable right to do with one's private property as he or she may, practical considerations have from almost the beginning of our Republic limited the extent of those constitutional protections. Zoning challenges require courts to examine the tension between the constitutional protections and the practical limitations imposed thereon. In a case such as this, a court must not only determine whether the letter of the law was followed, but whether the letter of the law itself crosses the line of constitutional 'unfairness.'

██ "The Trents appeal the decision of the Board pursuant to R.C. 2506.01. The Court is confined to the record in reaching its conclusion unless one of the parties moves, in accordance with the rules set forth in 1506.03, for the admission of additional evidence. Neither party has so moved and the Court finds the record sufficient to proceed. Regarding the Court's standard of review, Chapter 2506 is a curious legislative creation. On the one hand, the Court must treat the administrative appeal as if it were a civil action. R.C. 2506.03. It may reverse the decision of the agency below if it finds the decision was not based on a preponderance of the evidence. R.C. 2506.04. On the other hand, the Court's review is not de novo, *Dudukovich v. Lorain Metro. Housing Auth.* (1979), 58 Ohio St.2d 202, 207 [12 O.O.3d 198, 201–202, 389 N.E.2d 1113, 1116–1117], although it often resembles such, *id.*, and the Board's decision is accorded a presumption of validity. *C. Miller Chevrolet, Inc. v. City of Willoughby Hills* (1974), 38 Ohio St.2d 298, 302 [67 O.O.2d 358, 360–361, 313 N.E.2d 400, 403–404].

**14**

■ "A careful review of the law reveals that the language of 2506.04, which states that '[t]he court may find that the ... decision [of the board] is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record,' and Ohio Supreme Court opinions admonishing common pleas courts to defer to 'administrative expertise,' see *Dudukovich, supra* at 207 [12 O.O.3d at 201–202, 389 N.E.2d at 1116–1117], are in harmony. 'Ordinarily, the question of whether a [zoning alteration request] should or should not be authorized in a specific case is a matter with the sound discretion of the board of zoning appeals. However, the Common Pleas Court is given authority to reverse a decision of the board with respect to such a matter on a finding that the decision is "unreasonable." ' *Mentor Lagoons, Inc. v. Zoning Bd. of Appeals of Mentor Township* (1958), 168 Ohio St. 113, 118 [5 O.O.2d 372, 375, 151 N.E.2d 533, 537–538]. Therefore, the Court will presume the Board's decision is valid, but that presumption is subject to the customary constitutional analysis of laws enacted pursuant to a government's police power. See, *e.g., C. Miller Chevrolet, supra.* Giving due respect to 2506.04, if the Court should find that the Board's decision is not supported by a preponderance of the substantial, reliable, and probative evidence, or is otherwise unconstitutional, illegal, arbitrary, capricious, or unreasonable, the presumption of validity shall be deemed rebutted. The burden of proof of showing that the Board made an unreasonable or unsupportable decision falls on the Trents. See *id.* at 302 [67 O.O.2d at 360–361, 313 N.E.2d at 403–404].

■ "R.C. 519.14(B) allows the Board to authorize certain variances under special conditions where the terms of the variance would not be contrary to the public interest and where the literal enforcement would lead to *unnecessary hardship* to the claimant. However, the standard of this section has been limited to requests for 'use' variances, as opposed to 'area' variances. *Duncan v. Village of Middlefield* (1986), 23 Ohio St.3d 83 [23 OBR 212, 491 N.E.2d 692] (citing *Kisil v. City of Sandusky* (1984), 12 Ohio St.3d 30 [12 OBR 26, 465 N.E.2d 848]). Where, as in the case *sub judice,* the variance sought does not stem from a proposed 'use' of the land, but rather from a proposal that would be inconsistent with certain 'area' requirements, the Ohio Supreme Court has adopted a 'practical difficulties' test: if the denial of an area variance request would cause the claimant practical difficulties, and the variance would not otherwise be contrary to public interest, the Board should allow the variance. See *Duncan,* 23 Ohio St.3d at 86 [23 OBR at 214–215, 491 N.E.2d at 695–696].

■ "Upon review of *Kisil* and *Duncan,* it appears that what the Ohio Supreme Court contemplated as constituting 'use' variances were nothing more than the sort of 'conditional use permit' at issue in this case, as such is defined by the German Township Zoning Resolution ('GTZR'), section 803. Additionally,

what the *Kisil* and *Duncan* courts held to be 'area' variances seem to be the sole type of variance contemplated by the GTZR. Section 403(1) & (2). This is true even though GTZR 403(B)(2) refers to variances for additions made to buildings and structures. Although, taken literally, this provision would seemingly signify 'use' variances, it was just these sorts of uses at issue in *Kisil* and *Duncan* that the Ohio Supreme Court Court deemed to require mere 'area' variances (on account of the additions cutting into the zoned property area). Given *Kisil* and *Duncan*, this Court is hard pressed to conceive of any variance contemplated by the GTZR that would be anything other than an 'area' variance. The result of this, of course, would be that the 'unnecessary hardship' standard, as enacted by the Ohio General Assembly and incorporated into GTZR 405(A), for determining whether the denial of a variance is reasonable, could never be properly applied by the Board in its review of a variance request.[1] However, the Court need not pass judgment on that question here. Whatever the wisdom of *Kisil* and *Duncan*, this case falls within the rubric of those two cases. Thus, if the Trents can show they will face 'practical difficulties' if the variance is not met, the Court should order the variance be granted.

"Regarding conditional use permits, pursuant to 519.14(C), the Board may grant requests therefor as provided for in the GTZR. The discretion to grant is that of the Board's, subject to the constitutional scrutiny noted above.

"Article 4 of the German Township Zoning Resolution sets out the regulations governing the procedures for obtaining variance and conditional use permits. Article 8 details the specific primary and conditional uses allowed in the agricultural district. Although the Trents seem to make a single argument that the decision of the Board was arbitrary, unreasonable, and unconstitutional, the Court thinks it plain that there are several unique arguments. In the first place, the standard for determining whether to grant a conditional use is separate from that concerning a variance. As well, the variance issue actually gives rise to two independent sub-issues: 1) whether the Board correctly determined that a denial of the variance would lead to practical difficulties for the Trents; and 2) even if the Trents would not experience practical difficulties, whether the denial of the variance was constitutionally impermissible. The Court shall address the requests for a conditional use and a variance in turn.

"a. Conditional Use Permit

---

1. On the other hand, after *Duncan*, the "unnecessary hardship" test could conceivably apply to a "conditional use" request, but even this would be inconsistent with the statutory scheme which does not refer to any such standard as it concerns conditional use requests. Compare R.C. 519.14(B) with 519.14(C).

"The Trents' 17.8-acre piece of farm property is in a district that 'has been established to provide for agricultural activity and related uses and is intended to protect and preserve areas of prime agricultural soils for continued agricultural and agriculturally related uses.' GTZR, Preamble to Article 8. It is intended that aside from the structures currently existing on the Trent property, the land be used for agriculture. The zoning regulations run with the land; thus, to split the property and build a house on the new lot, the Trents need a permit. One conditional use contemplated by the GTZR is a single-family residential dwelling. The Trents argue that their request in this case—to build a house on the property in order to live closer to their daughter and grandchildren while keeping the majority of the land in farm production—is reasonable, and the denial thereof is unreasonable.

"It should be noted that if zoning decisions turned merely on whether proposals for conditional uses were reasonable, there'd be little need for zoning regulations in the first place—every proposal would come down to an *ad hoc* determination of the *reasonableness of the proposal.* That is not the standard. Property owners may not avoid zoning laws and regulations merely because the laws and regulations inconveniently prohibit their own reasonable use proposals. Zoning laws and regulations, for better or for worse, are a part of our culture, and will withstand constitutional scrutiny *so long as the Board's decision is not unreasonable and not arbitrary.* Thus, while desiring to live closer to ones family is by all means reasonable, the claimant's purpose is not what the Court is concerned with. The Court is concerned with the conduct of the Board. So long as the record indicates that the Board considered all of the evidence and testimony, did not unfairly prevent any evidence or testimony from being received, and, in the end, made a reasonable decision based on that evidence and testimony, then although the result may seem unfair, it is not unconstitutionally unfair.

"The evidence that across Eby Road there are many more homes on vastly smaller tracts of land is not relevant to whether the new home should be permitted on the Trents' side of Eby Road. Zoning laws are by their very nature defined by geographical borders. Residents living in [an] agricultural district are subject to the same regulations whether the land is located in the center of the district, or on its exterior. In general, as with any legislation, the time for questioning the particular merits of zoning laws and regulations is during hearings prior to their enactment. Once passed, legislation and related regulations from the appropriate enforcement agency are presumed valid.

"In this case, the decision on whether to issue the conditional use permit rested on the merits of the variance request: the only factor that seems to have weighed against issuing the conditional use permit was the requirement that to effectuate

the use a variance would be required. Therefore, the variance issue is the threshold issue.

"b. Variance Request

 "The technical shortcomings of the Trents' proposal is that if the property were to be split as proposed to accommodate a residential dwelling, the lot frontage would be inadequate and the lot depth would be too great. Residential lots of more than eight acres are required to have a road frontage of at least 450 feet. Because, as proposed, the new property would be 8.89 acres in area, it would be subject to the 450–foot requirement. Additionally, the maximum allowable lot depth of a residential property is 750 feet. As proposed, the frontage would be about 300 feet and the depth well over 1000 feet.

"The factors the Board considers in deciding whether to grant a variance are set out at GTZR section 405.05: A) the special conditions of the land necessitating the variance request; B) whether a denial would constitute [practical difficulties][2]; C) whether the variance would adversely affect the public, safety, and morals; D) whether the variance desired would compromise the general spirit and intent of the zoning scheme of German Township. The Board denied the variance request on the ground that the granting of such would compromise the spirit of the zoning scheme. The staff member who conducted the variance report also found that the spirit would be compromised, but as to the other three factors, it was determined that those weighed in favor of granting the request. The staff report, however, is of little moment to this Court's determination of the Board's decision. The Board itself was silent on the other factors.

"At this point it should be observed that between R.C. § 519.14(B) (making the variance request test one of unnecessary hardship), the case law of the Ohio Supreme Court (making the variance request test one of practical difficulties, and enumerating a non-exhaustive list of seven factors to consider), and GTZR 405.05 (importing the 519.14(B) test as one of four factors to consider in deciding whether to grant a request), the law is anything but clear as to the appropriate standard to be used in determining whether to grant a variance request. The problems created by the conflicting authority include, first, the fact that the standard enacted by the General Assembly (i.e., 'unnecessary hardship') has been rendered a nullity by the Ohio Supreme Court, and second, the fact that even though this Court is to defer to the Board, the Board's four-factor standard is not the same as the standard prescribed by the Ohio Supreme Court, although there is some overlap. The confusion is evidenced in the Trents' Brief where in the

---

**2.** The variance standard actually refers to "unnecessary hardship," but as noted above, the Ohio Supreme Court has essentially replaced this standard with the "practical difficulties" standard insofar as "area" variances are concerned.

Statement of Facts they address the four factors used by the Board, while in the Applicable Law analysis they address the seven factors utilized by the Ohio Supreme Court.

"At bottom, the Court believes that what all authorities try to do is make a common sense decision as to whether a variance should be granted. Common sense requires that the Court take cognizance of a few factors: zoning regulations are about long-range planning, and cannot be upset merely because of short-term, or individualized, inconvenience; zoning regulations are proposed, debated, and enacted by residents of the community directly affected, and a court sitting at distance should not second-guess the legislative wisdom of the drafters merely because not all parties are happy with result; there will be times when either the regulation is wrongly applied, or when it is correctly applied but in such a strict fashion that it works practical difficulties on the claimant to the point the application is unfair or unconstitutional.

"Both sides in this case have looked at the seven 'practical difficulties' factors laid out in *Duncan*. The Board attempts to show that the majority of the factors tip in favor of affirming its decision. The Trents argue (correctly) that no single factor controls, and that the important factors, namely that without the variance they will not be able to pursue living closer to their daughter and grandchildren, weigh in their favor. *Duncan*, however, must be kept in perspective. The seven factors suggested there by the Ohio Supreme Court were only that—suggestive. Different facts will require that different questions be asked and different factors be considered, sometimes more, sometimes fewer, but in no two cases must the factors considered necessarily be the same.

"As noted above, the desire of the Trents to live nearer its family is without question reasonable, and the inability to do so would no doubt cause dissatisfaction, but the 'practical difficulties' standard established by the Ohio Supreme Court must mean something more than mere dissatisfaction or inconvenience if it is to have viability, and the underlying zoning regulations are to have any effect. No ability of the Trents to continue to use their land in an economically vital way is being curtailed in this case. Nor is there any evidence that the Trents have been treated any differently than others *living in the agricultural district.*

"It is not relevant that the neighbors who argued against the variance request themselves live on tracts of land that were formerly part of a much larger estate. Nor is the Court persuaded by the rational, but non-legal, argument that the Board should not be so concerned about a single-family dwelling on 8.89 acres of land when subdivisions are proliferating in nearby communities.

"In making its decision, the Board was called upon to weigh the purpose and spirit of the agricultural zoning regulations against the desire of the Trents to

build a new home to live closer to their daughter and grandchildren. A few neighbors opposed the request; one neighbor supported the request. The Board decided to deny and this Court cannot say that the preponderance of the reliable and probative evidence does not support that decision. In making its decision, the Board merely followed the letter of the law, a course that this Court finds reasonable. In the absence of any real evidence of bias or arbitrariness, it is not for the Court to second-guess the policy decisions of the Board.

"Nor is the decision of the Board unconstitutional. As noted, the Board applied the law of the GTZR in making its decision. The Trents do not argue that the law or regulations are facially unconstitutional, but merely unconstitutional as applied. 'In an appeal [under R.C. Chapter 2506] which challenges the constitutionality of a zoning ordinance as applied, the issue for determination is whether the ordinance, in proscribing a landowner's proposed use of his land, has any reasonable relationship to the legitimate exercise of police power by the municipality.' *C. Miller Chevrolet*, 38 Ohio St.2d at 302 [67 O.O.2d at 360, 313 N.E.2d at 403]. Certainly the Township has within its police power the right to enact zoning regulations. The question is whether prohibiting the Trents from building a home rationally relates to a legitimate legislative end. Importantly, the burden of proof is on the Trents to show that the Board acted unreasonably. See *id.*

"The Trents argue that if their lot were .89 of an acre smaller in size, neither the depth nor frontage requirements currently imposed upon their proposal would apply. But again, this argument is superficial. The legislative body has promulgated various dimension requirements depending on the size of a parcel. Those determinations were presumably made with due consideration, and it is not for the Court to rethink those policy decisions. The Court need not contemplate what set of facts might render the zoning regulation unconstitutional as applied, it need only find that it was not so in this case. The burden of proof is on the Trents to show that the Board acted unreasonably. Proof of their own inconvenience, however, is not adequate.

"As the Board cites in its Brief:

" 'By its nature, zoning interferes significantly with the owners' uses of property. It is hornbook law that mere ... interference with the property owner's personal plans and desires relative to his property is insufficient to invalidate a zoning ordinance or to entitle him to a variance or rezoning.' Brief of Appellee at 4 (citing *Eastlake v. Forest City Enterprises, Inc.* (1976), 426 U.S. 668, 674 [96 S.Ct. 2358, 2362–2363, 49 L.Ed.2d 132, 138] (emphasis and internal quotations removed)).

"As the Board's decision was reasonable, its decision is AFFIRMED.

"III. CONCLUSION

"After a thorough analysis of the facts and authorities proffered in this case, the Court finds the Trents' Appeal not well taken and it is hereby OVER-RULED; the decision of the German Township Board of Zoning Appeals is AFFIRMED."

The Trents' sole assignment of error is: "The trial court erred in affirming the denial of a conditional use permit and variance to allow for a lot split which was appropriate as a matter of law based on the preponderance of substantial, probative and reliable evidence presented by Appellant before the Board of Zoning Appeals."

This court most recently set forth the standards of review involved in an administrative appeal in *In re Application for Conditional Use of Watkins* (Feb. 18, 2000), Montgomery App. No. 17723, unreported, 2000 WL 192430, as follows:

"When a court of common pleas is reviewing an agency decision, it must 'determine whether there exists a preponderance of reliable, probative and substantial evidence to support' the decision. *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 207 [12 O.O.3d 198, 202], 389 N.E.2d 1113 [1117]. This does not mean that a trial court can substitute its judgment for that of the agency, particularly when the agency has expertise in the area. *Id.* Further, the trial court must presume that the agency decision is 'reasonable and valid.' *Community Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals* (1993), 66 Ohio St.3d 452, 456, 613 N.E.2d 580 [584]. Accordingly, if the trial court finds that the agency's decision is supported by a preponderance of reliable, probative and substantial evidence, then the decision must be affirmed. *Dudukovich, supra.*

"An appellate court, on the other hand, has a much more limited standard of review. When reviewing a trial court's decision regarding an agency's order, the appellate court need only determine if the trial court abused its discretion. *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264 [267–268]. It is well settled that an abuse of discretion exists where the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Montgomery* (1991), 61 Ohio St.3d 410, 413, 575 N.E.2d 167 [170–171]. Therefore, we must affirm the trial court's decision absent an abuse of discretion."

Furthermore, the Supreme Court of Ohio has pointed out that the fact that a reviewing court might have arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for so doing. *Lorain City Bd. of Edn. v. State Emp. Relations*

*Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264, 267–268. As the trial court noted, the board of zoning appeals denied the variance request essentially on the ground that the granting of such would compromise the spirit of the zoning scheme. This court recognized the validity of that argument in *Watkins, supra,* at 3. Based upon the analysis by the trial court of the facts in this matter and the applicable law, we cannot find that it abused its discretion. We hereby approve the opinion of the trial court and adopt it as our own.

The sole assignment of error is overruled, and the judgment is affirmed.

*Judgment affirmed.*

WOLFF, P.J., and BROGAN, J., concur.