STICKELMAN et al., Appellants,

v.

HARRISON TOWNSHIP BOARD OF ZONING APPEALS, Appellee.

[Cite as *Stickelman v. Harrison Twp. Bd. of Zoning Appeals*, 148 Ohio App.3d 190, 2002-Ohio-2785.]

Court of Appeals of Ohio,
Second District, Darke County.

No. 1565.

Decided June 7, 2002.

Raymond M. Donadio, Jr., and Michael D. Baker, for appellants.

Richard M. Howell, for appellee.

BROGAN, Judge.

{¶ 1}   In 1993, Max and Dixie Stickelman purchased 37 acres in Harrison Township, Darke County, Ohio.   At the time, the property was not zoned. However, in 1997, Harrison Township passed a zoning resolution that prohibited building on lots of less than 20 acres.   Lots were also required to have a certain amount of road frontage.

{¶ 2}   The Stickelmans had built a home on the property, but wanted to subdivide the land into three parcels.   Two of the proposed parcels (including the

one on which their home was located) were to be 14 acres each, and the remaining parcel was to be 9 acres. Because the lot sizes were less than 20 acres, the Stickelmans filed an application for an area variance with the Harrison Township Board of Zoning Appeals ("board"). The entire parcel also did not have road frontage. Instead, the Stickelmans gained access to the nearest public road (Steve Bohn Rd.) though an easement that ran perpetually with the land. Consequently, the Stickelmans also asked for a variance on the frontage requirement.

{¶ 3} The board scheduled a public hearing on November 20, 2000. At that time, the Stickelmans appeared and presented testimony from (1) the Darke County Extension Agent, (2) Max Stickelman, (3) the Darke County Engineer, and (4) the Darke County Sheriff. Members of one family (neighbors) spoke against the variance. After a brief discussion, the board voted to deny the Stickelmans' application. Subsequently, the Stickelmans filed an R.C. Chapter 2506 appeal with the Darke County Common Pleas Court.

{¶ 4} At the common pleas level, the record was supplemented with additional testimony from the following people: Max Stickelman, Robert Turner (Chairman of the Darke County Planning Commission), James Surber (Darke County Engineer), and Steve Bohn (Chairman of the Harrison Township Board of Zoning Appeals, testifying on the board's behalf). After hearing testimony, the trial court upheld the board's decision, and the present appeal was then filed. On appeal, the Stickelmans raise the following assignments of error:

{¶ 5} "I. The trial court abused its discretion by affirming the decision of the Harrison Township Board of Zoning Appeals based upon a misapplication of the standards set forth in Chapter 2506 of the Revised Code and in *Duncan v. Middlefield,* 23 Ohio St.3d 83 [23 OBR 212], 491 N.E.2d 692 (1986).

{¶ 6} "II. The trial court abused its discretion in holding that the decision of the Harrison Township Board of Zoning Appeals was not arbitrary and capricious.

{¶ 7} "III. The trial court abused its discretion in determining that the decision of the Board of Zoning Appeals for Harrison Township was constitutional."

{¶ 8} Upon reviewing the record and pertinent law, we find that the assignments of error are without merit. Accordingly, the decision of the trial court will be affirmed.

## I

{¶ 9} In the first assignment of error, the Stickelmans contend that the trial court abused its discretion by misapplying both the standards for an administra-

tive appeal and applicable case law. The standard for administrative appeals is that the common pleas court is to consider the entire record, including new or additional evidence that is admitted. The court then decides whether "the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." *Henley v. Youngstown Bd. of Zoning Appeals* (2000), 90 Ohio St.3d 142, 147, 735 N.E.2d 433.

{¶ 10} In contrast, our own standard of review is more limited. We may review the common pleas court judgment " 'only on "questions of law," which does not include the same extensive power to weigh "the preponderance of substantial, reliable and probative evidence," as is granted to the common pleas court.' " 90 Ohio St.3d at 147, 735 N.E.2d 433. However, "within the ambit of 'questions of law' for appellate court review would be abuse of discretion by the common pleas court." *BP Oil Co. v. Dayton Bd. of Zoning Appeals* (1996), 109 Ohio App.3d 423, 428, 672 N.E.2d 256. In this regard, the Ohio Supreme Court has also stressed:

{¶ 11} "The fact that the court of appeals, or * * * [the Supreme Court], might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." 90 Ohio St.3d at 147, 735 N.E.2d 433.

{¶ 12} Based on the above authority, our inquiry is whether the trial court abused its discretion in applying the law. The Stickelmans believe that the trial court did, in fact, abuse its discretion by misapplying the standard for variances that was established in *Duncan v. Middlefield* (1986), 23 Ohio St.3d 83, 23 OBR 212, 491 N.E.2d 692. In a case decided a few years before *Duncan,* the Ohio Supreme Court held:

{¶ 13} "The standard for granting a variance which relates solely to area requirements should be a lesser standard than that applied to variances which relate to use. An application for an area variance need not establish unnecessary hardship; it is sufficient that the application show practical difficulties." *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 12 OBR 26, 465 N.E.2d 848, syllabus.

{¶ 14} Two years later, in *Duncan,* the court outlined a list of factors to be applied in deciding whether landowners had encountered "practical difficulties" in using their property. These included, but were not limited to, "(1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely

affect the delivery of governmental services (e.g., water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance." 23 Ohio St.3d 83, 84, 23 OBR 212, 491 N.E.2d 692, syllabus.

{¶ 15} Concerning the first factor, the trial court found that the Stickelmans would not be deprived of any beneficial use of the property without the variance. In particular, the court noted that the tract could be divided at least once into a tract of 20 or more acres. While this option might not be as lucrative as subdividing the property into two tracts, the trial court noted that the highest economic return for a property is not the decisive factor in variances. The Stickelmans feel that this conclusion is erroneous for several reasons. First, they claim that the court's analysis incorporated the "unnecessary hardship" standard that was rejected in *Kisil.* However, we do not think the trial court focused on unnecessary hardship.

{¶ 16} In *Duncan,* the landowners asked for a variance to build an eight-unit, multi-family dwelling, but the zoning board rejected the request. Instead, the board reaffirmed a previously authorized variance for construction of a four-unit addition to the dwelling that was currently on the property. 23 Ohio St.3d at 83, 23 OBR 212, 491 N.E.2d 692. In finding that the landowners had not established practical difficulties justifying a variance, the Ohio Supreme Court noted that the landowners "could have made beneficial use of their property and received a reasonable return either by construction of additional duplexes (which would not have required a variance from existing frontage requirements) or by construction of a four-unit addition to the existing dwelling as per the variance granted in April 1980. The Duncans [landowners] offered no evidence to show that these plans were not economically feasible, and in previous hearings before the board[,] they indicated only that such plans were less feasible than the construction of the proposed eight-unit dwelling." Id. at 87, 23 OBR 212, 491 N.E.2d 692.

{¶ 17} Accordingly, the court found that the board's denial of the variance was supported by a preponderance of reliable, probative, and substantial evidence. Id. at 88, 23 OBR 212, 491 N.E.2d 692.

{¶ 18} The above comments of the Ohio Supreme Court clearly indicate that landowners are not entitled to variances simply because they cannot obtain the maximum desired economic benefit from their property. To the contrary, the issue is whether landowners can make beneficial use of their property and receive a "reasonable return." Since the trial court's factual conclusions fit within this framework, it did not misapply the first *Duncan* factor.

{¶ 19}  The Stickelmans additionally claim that the court erred by finding that the parcel could be divided into two 20–acre parcels, when the total acreage is only 37 acres.  However, this is not what the court said in its decision.  As we mentioned, the trial court commented that the property could be divided at least once into a tract equal to 20 acres.  What we think the court meant is that a new tract of 20 acres could be created, without obtaining a variance, and the Stickelmans could continue to live in their home, on the remaining 17 acres.  This appears to be a correct interpretation.

{¶ 20}  Specifically, the zoning regulations provide that "[r]ural farm dwellings are permitted to locate within the A–1 Agricultural District on lots with a minimum size of twenty (20) acres."  Harrison Township Zoning Regulations, Section 302.01, Article III.  Because the Stickelmans' home has already been built, they would not be "locating" a rural farm dwelling within the agricultural district if they subdivided the parcel and retained 17 acres and the house for their own use.  Consequently, Section 302.01 would not prevent subdivision of the property as suggested by the trial court.

{¶ 21}  Section 302.05(A), Article III also says that "[n]o parcel of land shall be less than twenty (20) acres in area, except for parcels owned by public utilities or where specifically stated otherwise for conditional uses within the district."  This might be read to prevent subdivision of the parcel where both lots do not equal at least 20 acres.  However, the board's own interpretation of its regulations indicates otherwise.  For example, the board, in its minutes, interpreted Section 302.05 as requiring that "new lots" are to be 20 acres in size.  Moreover, Section 302.05 is subtitled "Development Standards."  Again, an existing home has already been "developed."  Consequently, under the board's own interpretation, the Stickelmans' existing home would not qualify as a "new lot" and there would be no barrier to severing 20 acres as a site for another home.

{¶ 22}  We note that the zoning board chairman also referred to another zoning clause that would let the Stickelmans keep their existing home, plus five acres, and sell the rest (a homestead exemption).  Thus, even if we ignore the board's own interpretation of its zoning code, denial of a variance would not deprive the Stickelmans of beneficial use and a reasonable return on their property.  Specifically, they would still be able to sell 32 acres.

{¶ 23}  The second *Duncan* factor is "whether the variance is substantial."  23 Ohio St.3d at 83, 23 OBR 212, 491 N.E.2d 692.  In *Duncan,* this factor was analyzed in the context of whether other similar variances had been granted.  Id. at 87, 23 OBR 212, 491 N.E.2d 692.  In applying this factor, the trial court indicated that the evidence submitted about prior variances was not persuasive.  The court noted that some examples involved small lots, which did not raise the 20–acre agricultural consideration.  Yet another variance involved a property that

was subject to a homestead exemption, which allows landowners to subdivide, while retaining five acres and a homestead.

{¶ 24} In attacking these conclusions, the Stickelmans first claim that the 23 acres being subdivided were a liability and were not usable. As a result, they feel that whether the variance was substantial is of little importance to the analysis. Again, we disagree. As we said, even if the property was not economic from an agricultural perspective, part of the property could still have been sold.

{¶ 25} The Stickelmans also challenge the trial court's math, which was admittedly incorrect, i.e., the court referred to the division of a "26" acre tract into 19- and five-acre parcels, when it should have said "24." We do not think this is a significant error. Further, we agree with the trial court that the variance was substantial. We have reviewed the materials that were submitted concerning other variances that the board granted, and there is nothing to indicate that these parcels were similar to the Stickelman property. In fact, Stickelman testified that he had researched the board's minutes and did not find any other road frontage variances that had been granted.

{¶ 26} As we noted earlier, the Stickelman property lacks road frontage. Section 401.01, Article IV of the Harrison Township Zoning Regulations states that "[n]o new lot shall be created nor shall any building be erected upon a lot which does not possess the required minimum frontage on a public street established for the district in which such lot is located." According to the board chairman, 550 feet of road frontage is required in agricultural areas for building a house. Thus, since the property had no road frontage, and no other examples of similar variances were found, the trial court did not err in finding that the variance was substantial.

{¶ 27} The third *Duncan* factor focuses on substantial alteration of the neighborhood's character or detriment to adjoining properties, while the fourth factor concerns adverse effect of the variance on delivery of governmental services like water, sewer, and garbage. 23 Ohio St.3d at 83–84, 23 OBR 212, 491 N.E.2d 692. After reviewing the record, the trial court found the evidence inconclusive as to both the third and fourth factors. As a result, the court said it would defer to the board's decision.

{¶ 28} The Stickelmans contend that the trial court erred by deferring to the board. They argue that if the court found the evidence inconclusive, it had to also find that the board's decision was not supported by a preponderance of the evidence. Again, we disagree. The Ohio Supreme Court did not say in *Duncan* that all factors would be present in every case. In fact, the court did not even discuss whether the variance in *Duncan* would adversely affect the delivery of government services. See, generally, 23 Ohio St.3d at 84, 23 OBR 212, 491 N.E.2d 692. Moreover, *Duncan* stressed that "no single factor controls in a

determination of practical difficulties," and that the factors should be "considered and weighed." Id. at 86, 23 OBR 212, 491 N.E.2d 692. Consequently, a variance may be denied even if some factors weigh in favor of a landowner or are inconclusive.

{¶ 29} Regarding the fifth factor, no one claims that the Stickelmans purchased the property before the zoning resolution was passed. The sixth factor is "whether the property owner's predicament feasibly can be obviated through some method other than a variance." We have already rejected the Stickelmans' argument about this point, since other alternatives existed for avoiding their predicament.

{¶ 30} Finally, *Duncan* requires courts to consider "whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance." Id. at 84, 23 OBR 212, 491 N.E.2d 692. In this regard, the trial court found that the zoning regulations were intended to preserve the agricultural use and character of the land. Although the Stickelmans argued that the land lacked agricultural value, the court found this to be simply a repetition of the claim that the most profitable use of the land should control.

{¶ 31} The Stickelmans challenge this finding with an argument we have already rejected, i.e., that the trial court improperly reinstated the "unnecessary hardship" test. In addition, they say that the trial court improperly equated two points: (1) whether the property would yield a reasonable return without the variance; and (2) whether the spirit and intent of the zoning regulations would be served by granting the variance.

{¶ 32} We see nothing in the trial court's decision that strikes us as a misapplication of the law. Under *Duncan*, the court is to weigh the competing interests of the property owner and the community. 23 Ohio St.3d at 87, 23 OBR 212, 491 N.E.2d 692. In this regard, Section 302.01 of the Harrison Township Zoning Regulations stresses an intent to protect the township's existing agricultural character. At the hearing, the board also expressed concern over the road frontage issue and whether Steve Bohn Road was wide enough to accommodate rescue vehicles. The township trustees commented that they barely had funds to maintain existing roads, and did not have room to widen the road. Given the township's expressed interest in preserving the agricultural character of township property, and the fact that the Stickelmans were not deprived of a reasonable return or any beneficial use of their property, denial of the variance was not unreasonable. Although we may have made a different decision than either the board or the trial court, we cannot say that the court incorrectly applied the law or abused its discretion. As we said earlier, our review power in these types of cases is quite limited.

{¶ 33} As a final point, we note that the Stickelmans have spent a significant amount of time discussing the fact that agricultural use of the land is not feasible. We think this is a non-issue, since the board's chairman said at trial that the board did not generally disagree about the agricultural use of the land. Instead, the board's main concerns were the lack of road frontage and a bottleneck caused by the proximity of a barn to the easement (the barn was within three or four feet of the easement).

{¶ 34} In light of the preceding discussion, the first assignment of error is overruled.

## II

{¶ 35} In the second assignment of error, the Stickelmans claim that the trial court abused its discretion by failing to find that the board's decision was arbitrary and capricious. In this regard, the Stickelmans argue that the board denied their request for a variance simply because the property did not comply with zoning regulations. They then point out that a variance is, by definition, a deviation from zoning requirements. As a result, they contend that noncompliance with zoning requirements cannot be used to justify denial of a variance.

{¶ 36} Logically, this argument makes sense. On the other hand, landowners are not entitled to variances simply because their property fails to meet zoning requirements. In other words, variances should not be either arbitrarily granted or denied. This is what the Ohio Supreme Court probably had in mind when it said that "[t]he key to * * * [the practical difficulties] standard is whether the area zoning requirement, as applied to the property owner in question, is reasonable." *Duncan,* 23 Ohio St.3d at 86, 23 OBR 212, 491 N.E.2d 692. A landowner also has the burden of proving that application of the zoning ordinance would be inequitable. Id. See, also, e.g., *Burkholder v. Twinsburg Twp. Bd. of Zoning Appeals* (1997), 122 Ohio App.3d 339, 343, 701 N.E.2d 766.

{¶ 37} As an additional matter, the trial court in the present case did not uphold the denial merely because the property lacked road frontage or violated area requirements. Instead, the court applied the *Duncan* factors and concluded that the board had acted reasonably. Our own analysis, in turn, has revealed that the trial court did not abuse its discretion in affirming the board. As we said, the fact that we may have reached a different result is "immaterial." *Henley,* 90 Ohio St.3d 142, 147, 735 N.E.2d 433.

{¶ 38} In the second assignment of error, the Stickelmans also claim that evidence opposing the variance was largely speculative. As an example, they cite remarks of neighbors who felt that subdividing the property would cause too much traffic and congestion. However, the trial court did not rely on this

testimony. Instead, the court found that two additional houses and outbuildings would not be a significant source of distraction and congestion.

{¶ 39} The Stickelmans also feel that evidence about traffic easement concerns was speculative. Again, the trial court did not rely on this evidence, but said it was inconclusive. Nonetheless, the court ultimately agreed with the board that the variance should not be granted. Since we find no error in that decision, the second assignment of error is without merit and is overruled.

### III

{¶ 40} In the third of assignment of error, the Stickelmans focus on the alleged unconstitutionality of the board's decision. In this regard, they claim that the Harrison Township Zoning Regulations do not provide sufficiently adequate standards to guide the board in decisions concerning variances. This issue was raised in the trial court but the court did not comment on the matter in its final decision.

{¶ 41} Enactments are constitutionally invalid if they contain criteria and standards that do not adequately guide administrative officers or tribunals responsible for carrying out the policy of the law. See, e.g., *State ex rel. Selected Properties v. Gottfried* (1955), 163 Ohio St. 469, 470–471, 56 O.O. 397, 127 N.E.2d 371. In this regard, Section 1003, Article X of the Harrison Township Zoning Regulations establishes guidelines for appeals and variances. First, Section 1003.03 (Variances) says:

{¶ 42} "The Board of Zoning Appeals may authorize, upon appeal in specific cases, such variances from the terms of this zoning resolution as will not be contrary to the public interest or the intent of this zoning resolution where, owing to special conditions, a literal enforcement of this zoning resolution would result in unnecessary hardship, or in the case of area variances only, practical difficulties.

{¶ 43} Section 1003.05 (Standards for Granting Variances) goes on to say:

{¶ 44} "Variances may be granted provided that such uses shall be found to comply with the following standards:

{¶ 45} "A. Because of the particular physical surroundings, shape, or topographical conditions of the specific property involved, a particular hardship to the owner would result, as distinguished from a mere inconvenience if the strict letter of this zoning ordinance were to be carried out.

{¶ 46} "B. The conditions upon which the application for variance is based are unique to the property for which the variance is sought, and are not applicable generally, to other property in the same zoning district.

{¶ 47} "C. The purpose of the variance is not based exclusively upon a desire to increase financial gain.

{¶ 48} "D. The alleged difficulty or hardship is caused by strict interpretation of this zoning resolution and has not been caused by any persons presently having an interest in the property.

{¶ 49} "E. The granting of the variance will not be detrimental to the public welfare or injurious to other property and improvements in the neighborhood in which the property is located.

{¶ 50} "F. The proposed variance will not impair an adequate supply of light and air to adjacent property, or substantially increase the congestion of the public streets, or increase the danger of fire, or endanger the public safety, or substantially diminish or impair property values within the neighborhood."

{¶ 51} We have previously found that the above criteria comply with "the essential spirit" of the *Duncan* factors, even though they are not identical to the criteria outlined in *Duncan*. See *Harlamert v. Oakwood* (June 16, 2000), Montgomery App. No. 17983, 2000 WL 770515, at * 6 (discussing Oakwood zoning regulations). We take the same view here, and find that the Harrison Township Zoning Regulations provide adequate guidelines for the board's decision-making.

{¶ 52} We also reject the Stickelmans' claim that the zoning regulations are defective because they use the term "particular hardship," which allegedly is not the equivalent of "unnecessary hardship." To support this point, the Stickelmans rely on *Cole v. Marion Twp. Bd. of Zoning Appeals* (1973), 39 Ohio App.2d 177, 68 O.O.2d 363, 317 N.E.2d 65, in which the Third District Court of Appeals held:

{¶ 53} "To the extent that the provisions of a township zoning resolution relating to the granting of a variance define or limit the term hardship to anything other than, or the equivalent of, unnecessary hardship such provisions are invalid and inoperative." Id. at paragraph three of the syllabus.

{¶ 54} In the text of the opinion, the Third District Court of Appeals elaborated further, by stating:

{¶ 55} "It is obvious that the provisions of the zoning resolution complained of by the appellant purporting to give the board of zoning appeals authority to grant a variance when use of the land will impose upon the owner 'unusual and practical difficulties' tend to apply a different standard than permitted by R.C. 519.14. Additionally, the adjectival modification of the word 'hardship' by the words 'particular' [sic] or 'unusual' are not the equivalent of the statutory adjective, 'unnecessary.'" Id. at 182, 68 O.O.2d 363, 317 N.E.2d 65.

{¶ 56} We do not find *Cole* persuasive. In the first place, *Cole* was decided before *Duncan*, which adopted the practical difficulties standard for area vari-

ances. Since the present case deals with an area variance, the issue of whether "particular hardship" equates with "unnecessary hardship" has no relevance.

{¶ 57} We do note that *Cole* has been interpreted, at least by the Twelfth District Court of Appeals, as representing a minority view among Ohio appellate districts. The Twelfth District Court of Appeals has adopted the minority view, and has held that townships may grant variances only in cases where unnecessary hardship is caused to the landowner, even where area variances are at issue. *Dsuban v. Union Twp. Bd. of Zoning Appeals* (2000), 140 Ohio App.3d 602, 607, 748 N.E.2d 597.

{¶ 58} We have not adopted the minority view. In fact, we have previously applied *Duncan* to township zoning regulations. See *Trent v. German Twp. Bd. of Zoning Appeals* (2001), 144 Ohio App.3d 7, 14, 759 N.E.2d 421, and *Go v. Sugarcreek Twp. Bd. of Zoning Appeals* (June 1, 2001), Greene App. No. 2000–CA–66, 2001 WL 585657, at * 3. In *Trent,* we noted that some confusion existed in the law about the factors and standards to be used in zoning cases. However, we also stressed:

{¶ 59} " '[W]hat all authorities try to do is make a common sense decision as to whether a variance should be granted. Common sense requires that the Court take cognizance of a few factors: zoning regulations are about long-range planning, and cannot be upset merely because of short term, or individualized, inconvenience; zoning regulations are proposed, debated, and enacted by residents of the community directly affected, and a court sitting at distance should not second-guess the legislative wisdom of the drafters merely because not all parties are happy with [the] result * * *.' " 144 Ohio App.3d at 18, 759 N.E.2d 421 (quoting from trial court opinion).

{¶ 60} As a further point, we must note that the Stickelmans would not be helped if we adopted the minority position, since the practical difficulties standard imposes a lesser burden on landowners than "unnecessary hardship." *Go,* 2001 WL 585657, at * 3.

{¶ 61} Finally, the Stickelmans point out that the board was unaware of the *Duncan* case before making its decision. However, this issue is also irrelevant because the township regulations fit within the spirit of the *Duncan* factors. *Harlamert,* 2000 WL 770515, at * 6. Presumably, the board was aware of its own regulations, even if the members were not familiar with a particular decision of the Ohio Supreme Court.

{¶ 62} In view of the above analysis, the third assignment of error is without merit and is overruled.

{¶ 63}  Because all assignments of error have been overruled, the judgment of the trial court is affirmed.

Judgment affirmed.

GRADY and FREDERICK N. YOUNG, JJ., concur.