**WOOTEN, Appellee, et al.,**

**v.**

**NEAVE TOWNSHIP BOARD OF ZONING APPEALS, Appellant.**

[Cite as *Wooten v. Neave Twp. Bd. of Zoning Appeals,*
150 Ohio App.3d 56, 2002-Ohio-5992.]

Court of Appeals of Ohio,
Second District, Darke County.

No. 1579.

Decided Nov. 1, 2002.

Paul R.F. Princi, for appellee.

Richard M. Howell, Darke County Prosecuting Attorney, for appellant.

---

BROGAN, Judge.

{¶ 1} This case is before us on the appeal of the Neave Township Board of Appeals ("board") from a trial court judgment reversing the board's decision to deny a conditional use application. As a single assignment of error, the board claims that the trial court abused its discretion in finding that appellee, Mark Wooten, did not operate a business or home occupation at his residence.

{¶ 2} After considering the record and applicable law, we find the assignment of error to be without merit. Consequently, the trial court judgment will be affirmed.

I

{¶ 3} As is evident, this case arises from an administrative decision. In such situations, our review power is quite limited and differs from the power of the common pleas court. When administrative orders are appealed, common pleas courts "must weigh the evidence in the record and may consider new or additional evidence." *Smith v. Granville Twp. Board of Trustees* (1998), 81 Ohio St.3d 608, 612, 693 N.E.2d 219. After weighing the record, the common pleas court determines whether "a preponderance of reliable, probative and substantial evidence * * * support[s] the agency decision. * * * If a preponderance of reliable, probative and substantial evidence exists, the [c]ourt * * * must affirm

the agency decision; if it does not exist, the court may reverse, vacate, modify or remand." *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 207, 12 O.O.3d 198, 389 N.E.2d 1113.

{¶ 4} In contrast, " '[a]n appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope and requires the court to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence.' " *Smith,* 81 Ohio St.3d at 613, 693 N.E.2d 219. When we make this evaluation, we apply an abuse-of-discretion standard. *Houghtaling v. Medina Bd. of Zoning Appeals* (1999), 134 Ohio App.3d 541, 547, 731 N.E.2d 733. In other words, we decide whether the trial court acted unreasonably, unconscionably, or arbitrarily. *Trent v. German Twp. Bd. of Zoning Appeals* (2001), 144 Ohio App.3d 7, 20, 759 N.E.2d 421.

{¶ 5} According to the record in the present case, Mark Wooten lived on a 2.214–acre parcel in Neave Township. Wooten obtained a building permit and then constructed a barn on his property in October 2000. At the time the barn was constructed, Wooten owned a 21–ton dump truck that he used to haul gravel. He later added a second truck, in February 2001. Both trucks were kept in the barn on Wooten's property. Subsequently, in March 2001, Neave Township Zoning Inspector Linda Manos contacted Wooten about a report that he was operating a business from his property. Although Wooten said that he did not think he was operating a business, Manos told him that he must either apply for a variance or be fined $100 per day for every day that the application was not submitted. As a result, Wooten filed an application with the board, requesting a conditional use permit.

{¶ 6} Shortly thereafter, the board held a hearing, and allowed Wooten and a few neighbors to speak. The board then found that Wooten had a "home occupation," and denied the application for reasons found in Section 501.06 of the Neave Township Zoning Resolution ("zoning code"). Although the board did not clearly specify its reasoning, the decision appears to have been based on the fact that Wooten had two trucks on the premises, when only one vehicle was allowed for home occupations. The tonnage limits of the trucks also appear to exceed what was permitted for a home occupation.

{¶ 7} Wooten's property is zoned R–1, or "Rural Residential District." Permitted principal uses for R–1 are (1) churches or similar places of worship; (2) single family dwellings; and (3) public buildings like parks, playgrounds, libraries, schools, fire stations, and community centers. Zoning Code, Section 303.02. "Home occupation" is included as a permitted accessory use. Id., Section 303.03(E). "Home occupation" is defined as "[a]n occupation conducted by a person on the same premises as his principal place of residence and is clearly

subordinate and incidental to its use for residential purposes." Id., Section 1102.08(B).

{¶ 8}  While home occupation is permitted as an accessory use, certain limitations apply.  In this regard, Section 501.06 of the Zoning Code provides:

{¶ 9}  "The home occupation shall not use a driveway separate than that used for the principal dwelling.  Not more than one (1) vehicle nor any commercially licensed vehicle larger than a one (1) ton truck shall be used in connection with any home occupation within a residential zoning district.  No traffic shall be generated by such home occupation in greater volume than would normally be expected in the neighborhood, and any need for parking generated by the conduct of such home occupation shall meet the off-street parking requirements as specified in this zoning resolution, and shall not be located in a required front yard."

{¶ 10}  In contrast, the Rural Residential District Regulations do not restrict the number of vehicles that an individual may have on the premises.  See, generally, Zoning Code, Section 303, Article III.

{¶ 11}  Following the denial of his application, Wooten appealed to the Darke County Common Pleas Court.  The court took additional evidence, consisting of live testimony from Wooten and a few exhibits, including an aerial map and photos of the Wooten property.  After hearing the evidence, the trial court reversed the board's decision that Wooten had a home occupation.  The court found that this conclusion was unreasonable and unsupported by a preponderance of substantial, reliable evidence.  In particular, the court focused on overwhelming evidence showing that Wooten merely used the trucks to commute from his home to his place of business, and to return home in the evening, much as anyone would use an employer-owned vehicle to commute to work.

{¶ 12}  We have also reviewed the record, and must affirm, because we cannot find, as a matter of law, that the trial court decision is unsupported "by a preponderance of reliable, probative, and substantial evidence." *Smith*, 81 Ohio St.3d at 613, 693 N.E.2d 219.  Specifically, the testimony in the trial court convincingly indicated that Wooten did not conduct an occupation on the premises, nor did he use his home as a place of business.

{¶ 13}  As we mentioned, when the new barn was built in October 2000, Wooten operated a sole proprietorship (Mark Wooten d.b.a. Wooten Trucking).  Wooten owned a 21–ton dump truck, which he used to haul gravel and stone.  From February 2000 until the time of trial (November 2001), Wooten had one client for whom he hauled stone—Piqua Materials.  Each day, Wooten drove his truck to Piqua Materials, which was about 26 miles away from his house.  Any materials to be delivered were located at Piqua Materials.  Customers also placed

orders with Piqua Materials, not with Wooten. After Wooten arrived at Piqua Materials each day, he picked up stone or gravel and delivered it to various contractors. At the end of the work day, Wooten drove his truck back to his barn and parked it. The truck was generally kept inside the barn.

{¶ 14} When Wooten woke up in the morning, he did not get a call from Piqua Materials. Instead, he simply reported to work. Wooten did not contact customers from his home, and no customers visited there. He did not advertise and was not listed as a business in the phone book. Additionally, Wooten did not bring material to his home for resale, nor did he store material there.

{¶ 15} In February 2001, Wooten bought a second truck. He then hired another individual, who lived some distance away. That person drove to Wooten's home each morning, picked up the second truck, and then followed Wooten to Piqua Materials. At the end of the day, the employee drove the truck back to Wooten's home and parked it, again generally inside the barn. Wooten did do bookkeeping for the business at home, and occasionally performed routine maintenance on the trucks, such as changing oil.

{¶ 16} In view of the above facts, we agree with the trial court's conclusion that the trucks were merely used to commute to work, much as one would use an employer-owned vehicle for commuting purposes. We also note that the regulations for "home occupation" contemplate services like babysitting, insurance sales, dressmaking, typing, etc., that are conducted on the premises. See Zoning Code, Section 501.11. A number of such services are listed in Section 501.11, together with a statement that includes "[o]ther uses not specifically mentioned that the Board of Zoning Appeals finds are similar in nature and impact." The activity in question is not specifically listed and is not similar in nature and impact, i.e., it does not involve services conducted on the premises. Instead, Wooten simply stored vehicles on the premises, which were then used to commute to another location for work. We see nothing about this activity that would lead to the conclusion that a "home occupation" was involved. Accordingly, the single assignment of error is without merit and is overruled.

{¶ 17} Based on the preceding discussion, the judgment of the trial court is affirmed.

Judgment affirmed.

FAIN and GRADY, JJ., concur.