[Cite as *Brunswick Hills Twp. Bd. of Trustees v. Ludrosky*, 2012-Ohio-2556.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

BRUNSWICK HILLS TOWNSHIP
BOARD OF TRUSTEES

    Appellee/Cross-Appellant

    v.

THOMAS LUDROSKY, et al.

    Appellants/Cross-Appellees

C.A. No.     11CA0026-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    10CIV0032

DECISION AND JOURNAL ENTRY

Dated: June 11, 2012

MOORE, Presiding Judge.

{¶1} Appellants, Thomas and Kimberly Ludrosky, appeal from the judgment of the Medina County Court of Common Pleas. Appellees, Brunswick Hills Township Board of Trustees, cross-appeal. This Court reverses.

I.

{¶2} Appellants, Thomas and Kimberly Ludrosky (collectively the "Ludroskys") own and reside on property in Brunswick Hills Township in Medina County, Ohio. The property is subject to the zoning resolutions of Brunswick Hills Township. Ms. Ludrosky owns Timberwolf, Inc., which provides crane services to individuals and contractors. The Ludroskys own two cranes for use in the business. When they are not in use, the cranes are stored in a pole barn on the Ludroskys' property.

{¶3} Edwin and Linda Sholtis (collectively the "Sholtises") live next to the Ludroskys. In July 2008, the Sholtises contacted the Brunswick Hills Township Zoning Inspector alleging

that the Ludroskys were conducting a business from their home in violation of the township's zoning resolution. On February 4, 2009, the inspector issued a determination letter finding that the Ludroskys were not conducting a business from their home. The Sholtises appealed to the Brunswick Hills Township Board of Zoning Appeals (the "BZA"). Following a public hearing, a decision was issued on July 15, 2009, declaring that an illegal business operation was being run from the Ludroskys' property. The decision instructed the zoning inspector to take all necessary and appropriate action to terminate the business operation. On August 10, 2009, pursuant to R.C. 2506.01, the Ludroskys filed a notice of appeal in the Medina County Court of Common Pleas challenging the decision of the BZA. However, the Ludroskys failed to file a praecipe requesting that the BZA prepare the record and transcript of the proceedings as required by R.C. 2506.02. As a result, the Medina County Court of Common Pleas dismissed the Ludroskys' appeal.

{¶4} On January 7, 2010, Appellee Brunswick Hills Township Board of Trustees (the "Board") filed a complaint for preliminary and permanent injunctive relief to restrain the Ludroskys from continuing to use their property in violation of the zoning resolution. After several hearings, the parties agreed to submit the case to the court on stipulated facts, evidence and documents in support of each party's proposed findings of fact and conclusions of law. On March 3, 2011, the trial court entered an order granting the permanent injunction and ordering the Ludroskys to "cease to store, park, or place any cranes or other construction equipment" on their property.

{¶5} The Ludroskys timely filed a notice of appeal. They raise two assignments of error for our review. The Board timely filed a notice of cross-appeal, and raises one assignment of error for our review. We will address the cross-appeal first to facilitate our review.

II.

## CROSS-APPEAL ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY NOT RULING ON WHETHER THE LUDROSKYS WERE PRECLUDED FROM RELITIGATING THE ISSUE OF WHETHER STORING CRANES ON THEIR RESIDENTIAL PROPERTY WAS AN IMPERMISSIBLE BUSINESS ACTIVITY.

**{¶6}** As a preliminary note, we will address the Board's assignment of error on cross-appeal. The Board contends that the trial court erred by not ruling on its argument that the Ludroskys were precluded from relitigating the issue of whether storing cranes on their property was an impermissible business activity. We disagree.

**{¶7}** The Board acknowledges that "[t]he grant or denial of an injunction is solely within the trial court's discretion and, therefore, a reviewing court should not disturb the judgment of the trial court absent a showing of a clear abuse of discretion." *Garona v. State*, 37 Ohio St.3d 171, 173 (1988). *See also Peroz v. Nagel*, 9th Dist. No. 22047, 2004-Ohio-5179, ¶ 12). However, because the applicability of res judicata is a question of law, we utilize a de novo standard of review. *Ohio Patrolmen's Benevolent Assn. v. Munroe Falls*, 9th Dist. No. 23898, 2008-Ohio-659, ¶ 13, citing *Payne v. Cartee*, 111 Ohio App.3d 580, 586-87 (4th Dist.1996).

**{¶8}** This Court has stated that "[t]he doctrine of res judicata provides that '[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.'" *Perrine v. Patterson*, 9th Dist. No. 22993, 2006-Ohio-2559, ¶ 22, quoting *Grava v. Parkman Twp.*, 73 Ohio St.3d 379 (1995), syllabus. Res judicata applies to administrative actions, where a party has failed to properly appeal the administrative ruling under R.C. 2506.01. *Green v. Akron,* 9th Dist. Nos. 18284, 18294, 1997 WL 625484 (Oct. 1, 1997). Here, Ludrosky attempted to appeal

to the court of common pleas pursuant to R.C. 2506.01, but it was dismissed for failing to file a praecipe requesting that the BZA prepare the record and transcript of the proceedings as required by R.C. 2506.02. The doctrine of res judicata also applies to situations where the BZA files a complaint for injunctive relief due to alleged failures to comply with zoning ordinances. *See Prairie Twp. Bd. of Trustees v. Ross*, 10th Dist. No. 03AP-509, 2004-Ohio-838, ¶ 14 (barring the appellant from raising issues that should have been raised in an appeal from the BZA's decision pursuant to R.C. 2506). Thus, the doctrine of res judicata may be argued in the present case.

{¶9} The doctrine of res judicata includes the concepts of issue preclusion (collateral estoppel) and claim preclusion. *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395 (1998). The concept of issue preclusion has been described as follows:

> [A] fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different.

*Fort Frye*, 81 Ohio St.3d at 395. *See also Rehoreg v. Stoneco, Inc.*, 9th Dist. No. 04CA008481, 2005-Ohio-12, ¶ 10.

{¶10} There are two types of issue preclusion. Offensive use of issue preclusion "occurs when the plaintiff seeks to foreclose the defendant from litigating an issue [that] the defendant has previously litigated unsuccessfully in an action with another party." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979), fn. 4. Defensive use of collateral estoppel occurs when a defendant seeks to prevent a plaintiff from asserting a claim that the plaintiff has previously litigated unsuccessfully in another action. *Id.* Here, the Board is attempting to use the doctrine offensively.

**{¶11}** The burden of pleading and proving the identity of issues rests on the party asserting the issue preclusion. *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 198 (1983), citing *Hernandez v. Los Angeles*, 624 F.2d 935 (9th Cir.1980). Also, issue preclusion can only be applied against parties who have had a prior "full and fair" opportunity to litigate their claims. *Goodson*, 2 Ohio St.3d at 198 quoting *C.A. Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 338 (5th Cir.1982).

**{¶12}** The Board contends that the trial court should have been precluded from deciding the issue of whether the storage of the cranes on their property was an impermissible business activity because it was already litigated before the BZA. Although the doctrine of res judicata may be raised in this context, the question here is whether this fact "was actually and directly at issue in [the] previous action" and whether Ludrosky was afforded "full and fair" opportunity to litigate the claims. *Fort Frye*, 81 Ohio St.3d at 395; *Goodson*, 2 Ohio St.3d at 198.

**{¶13}** In the previous action, the BZA framed the issue before it as whether an illegal business was being run from the Ludroskys' property. The evidence presented at the hearing included the use of the residence address as the address for the business, business calls conducted on the property, the storage of business documents on the property, and the maintenance and storage of the cranes on the property. The BZA determined that an illegal business operation was being run from the property, and ordered the inspector to cite the Ludroskys and take all necessary and appropriate action to terminate the operation of such business. Conversely, the issue framed by the Board in this action is whether storage of the cranes alone constitutes an impermissible business activity. In addition, the trial court's decision orders the Ludroskys to cease to store, park, or place any cranes or other construction equipment on their property, regardless of whether the use is related to business or personal activities. We conclude that this

action for injunctive relief reaches beyond the scope of the issues previously litigated, and thus, issue preclusion does not apply. Accordingly, the trial court did not err in failing to accept the Board's position on issue preclusion.

{¶14} The Board's assignment of error on cross-appeal is overruled.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ISSUING AN INJUNCTION AGAINST THE LUDROSKYS.

{¶15} In their first assignment of error, the Ludroskys argue that the trial court erred and abused its discretion by issuing an injunction against them. We agree.

{¶16} R.C. 519.24 authorizes a township board of trustees to seek an injunction enjoining a landowner from violating the township's zoning resolution. To prevail, the Board must show, by clear and convincing evidence, that the defendant is using his or her property in violation of a zoning ordinance. *Azar v. Baughman*, 9th Dist. No. 8686, 1978 WL 215229 (June 21, 1978). Once a violation is established, "[t]he decision to grant or deny an injunction is solely within the discretion of the trial court," and will not be reversed absent an abuse of discretion. *Bd. of Trustees of Columbia Twp. v. Albertson*, 9th Dist. No. 01CA007785, 2001 WL 1240135, *4 (Oct. 17, 2001), citing *Danis Clarkco Landfill Co. v. Clark Cty. Waste Mgt. Dist.*, 73 Ohio St.3d 590 (1995), paragraph three of the syllabus.

{¶17} The Brunswick Hills Township Zoning Resolution defines a "home occupation" as "[a]n accessory use conducted for intended financial gain within a dwelling where such use is clearly incidental and secondary to the use of the dwelling for residential purposes." The zoning resolution divides home occupations into two classes. "Class I Home Occupation[s]" are permitted uses under the resolution. A home occupation is considered "Class I" so long as:

1. It is conducted entirely within the residence dwelling; however, this does not include the garage;
2. The usage does not occupy more than twenty percent (20%) of the living floor area;
3. The home occupation does not require the visitation or solicitation of clients, continuous or frequent motor freight delivery of materials or removal of products, outdoor advertising, or display of products or services produced on the premises; and
4. No activity associated with the home occupation is to be visible from any public right-of-way or adjacent property[.]

A "Class II Home Occupation" is defined as "any home occupation which does not conform to the requirements for a "Class I Home Occupation." "Class II Home Occupation[s]" are conditionally permitted uses for which the BZA may issue conditional zoning certificates. However, the "proposed use shall not constitute primary or incidental storage of facilities for a business, industrial, or agricultural activity conducted elsewhere." It is undisputed that the Ludroskys were never granted a Class II Home Occupation certificate.

{¶18} First, we must determine whether the Ludroskys' use constitutes a home occupation, specifically, whether there was "[a]n accessory use conducted for intended financial gain within a dwelling" which then requires classification. The trial court's findings of fact acknowledge that the Ludroskys run a service which provides cranes to building contractors. The cranes are driven to the building sites by Mr. Ludrosky, and each night are returned to a garage on the Ludroskys' property. The trial court concluded that "[t]here is no doubt that the Ludroskys are running a business and there is no doubt that there is not another address for the business." The court further noted that the Ludroskys "are running a business out of their home, a business which involves contact with customers, billing, maintaining equipment, and storing equipment. Clearly their activity is far more than just parking cranes overnight." We are mindful that the trial court had the opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility

of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Nonetheless, we conclude that the trial court misapplied the facts to the law.

{¶19} In *Wooten v. Neave Twp. Bd. of Zoning Appeals*, 150 Ohio App.3d 56, 2002-Ohio-5992 (2d Dist.), a zoning board determined that Wooten, who housed two dump trucks in a barn he built on his property, had a home occupation. Wooten operated a sole proprietorship. Each day, he drove his truck to a location to haul gravel and stone to various customers. At the end of the day, he drove his truck back to his barn and parked it. The court acknowledged that Wooten did not contact customers from his home, and no customers visited there. He did not advertise, nor did he haul materials to his home for resale. He did do bookkeeping for the business at home, and occasionally performed routine maintenance. He even hired a second employee, who drove to his home each morning, and followed him to haul gravel and stone to customers as well. The employee returned the truck to Wooten's home each evening. The Second District affirmed the decision of the trial court and held that "the trucks were merely used to commute to work, much as one would use an employer-owned vehicle for commuting purposes." *Id.* at ¶ 16. The court found "nothing about this activity that would lead to the conclusion that a 'home occupation' was involved." *Id.*

{¶20} In *Miller v. Frye*, 5th Dist. No. CA-8862, 1992 WL 238505 (Aug. 31, 1992), a zoning inspector sought to permanently enjoin Frye from parking his semi tractor-trailer on his premises located in a residentially zoned area. Frye owned the truck and used it to deliver loads for a trucking company. His tax returns indicated that he had a sole proprietorship. Typically, Frye would call into the trucking company each afternoon to see if it had a job for him the following day. If so, he would drive his truck from his home to pick up a load, and then deliver it to another location prior to returning home and parking his truck at the end of the day. The

court noted that he did not have a business phone at his residence, nor did he advertise from there. The trial court "found as a matter of law that the parking of [Frye's] income-producing vehicle on his residential property was not equivalent to using his premises for business purposes." *Id.* at *2. On appeal, the inspector argued that Frye's tax filings indicated that he operated a sole proprietorship located at his home address. The Fifth District stated that "such evidence is not conclusive in demonstrating that [Frye] was using his residential premises for business purposes. * * * Instead, the evidence demonstrates that [he] was an owner of a semi tractor-trailer and used the same to earn a living. The mere fact that [Frye] parked this income-producing truck on his residential property during non-income producing hours does not, without more, establish that [he] was operating a trucking business from his home." *Id.* at *2-3. The court further held that Frye's tax deductions for the use of the truck in his business, and the fact that he named his home address as the business address, did not establish that he was in violation of the zoning ordinance.

{¶21} In the case at hand, the trial court focused on the fact that the Ludroskys' use of the property included "contact with customers, billing, maintaining equipment, and storing equipment." Based on prior precedent, "the mere parking of a commercial vehicle on residential property, without conducting any activity of the business on that property, does not amount to a business practice." *Kiracofe v. Ketcham*, 3d Dist. No. 1-05-19, 2005-Ohio-5271, ¶ 18, citing *Wooten* at ¶ 12-16. Furthermore, in *Wooten*, the performance of bookkeeping for the business at home, and the occasional routine maintenance did not amount to a home occupation. Likewise, the phone calls with the trucking company in *Frye*, and the fact that the residence was listed as the business address, was not equivalent to using the residence for business purposes. The Board stresses that this situation is factually distinct from those cases, particularly in light of the

cumulative effect of the storage of the cranes, the occasional calls conducted on the property, the storage of business documents, and the occasional use of the residence as a business address. However, in *Wooten*, even the fact that a second employee was hired and arrived at the residence every day to assist with the hauling did not amount to business activity. In *Frye*, the defendant made routine phone calls to inquire about trucking jobs, rather than occasional calls to customers. He also listed the residence as the business address for tax purposes, whereas the Ludroskys have utilized a post office box the majority of the time. Accordingly, we conclude that the Ludroskys' use of the property to store the cranes, and occasional phone calls and bookkeeping, does not amount to "[a]n accessory use conducted for intended financial gain within a dwelling."

{¶22} We conclude that the trial court erred in finding that the Ludroskys' use of the property constituted a home occupation, and, thus, abused its discretion in granting the permanent injunction. Accordingly, the Ludroskys' first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ISSUING AN OVERLY BROAD INJUNCTION PROHIBITING PERMITTED ACTIVITIES.

{¶23} In their second assignment of error, the Ludroskys argue that the trial court erred by issuing an overly broad injunction prohibiting permitted activities. However, in light of our disposition of their first assignment of error, we decline to address this second assignment of error as it is rendered moot. *See* App.R. 12(A)(1)(c).

III.

**{¶24}** The Ludroskys' first assignment of error is sustained. We decline to address their second assignment of error, as it is rendered moot. The Board's assignment of error on cross-appeal is overruled. The judgment of the Medina County Court of Common Pleas is reversed.

Judgment reversed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee/Cross-Appellants.

CARLA MOORE
FOR THE COURT

BELFANCE, J.
CONCURS.

CARR, J.
DISSENTING.

I respectfully dissent because I agree with the trial court's conclusion, based on its findings of fact, that the Ludroskys were operating a business from their home. Therefore, I would further address the Ludroskys' second assignment of error but overrule it because I would conclude that the injunction was not overly broad. Based on this resolution of the Ludroskys' appeal, I would decline to address the Board's cross-appeal as it has been rendered moot. *See* App.R. 12(A)(1)(c). Accordingly, I would affirm the trial court's judgment.

APPEARANCES:

JOSEPH R. SPOONSTER, III, Attorney at Law, for Appellants/Cross-Appellees.

DEAN HOLMAN, Prosecuting Attorney, and DAVID J. FOLK, Assistant Prosecuting Attorney, for Appellee/Cross-Appellant.