[Cite as *Moraine Materials Co. v. German Twp. Bd. of Zoning Appeals*, 2011-Ohio-2074.]

### IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

MORAINE MATERIALS CO.      :

     :      Appellate Case No.   24238

     Plaintiff-Appellant      :

     :      Trial Court Case No. 08-CV-10660

v.      :

     :      (Civil Appeal from

GERMAN TOWNSHIP BOARD      :      Common Pleas Court)

OF ZONING APPEALS      :

     :

     Defendant-Appellee      :

     :

. . . . . . . . . . .

## O P I N I O N

Rendered on the 29th day of April, 2011.

. . . . . . . . . . .

MICHAEL W. SANDNER, Atty. Reg. #0064107, Pickrel, Schaeffer & Ebeling Co., 2700 Kettering Tower, Dayton, Ohio 45423
     Attorney for Plaintiff-Appellant

MATHIAS H. HECK, JR., by DOUGLAS M. TROUT, Atty. Reg. #0072027, Montgomery County Prosecutor's Office, Appellate division, Montgomery County Courts Building, Post Office Box 972, 301 West Third Street, Dayton, Ohio 45422
     Attorney for Defendant-Appellee

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Plaintiff-appellant Moraine Materials appeals from a judgment of the

Montgomery Country Court of Common Pleas affirming a decision of defendant-appellee German Township Board of Zoning Appeals denying the application of Moraine Materials for a conditional use permit. Moraine Materials contends that the decision by German Township Board of Zoning Appeals does not comply with Township ordinance 406.05, and that the ordinance itself is void for vagueness.

{¶ 2} We conclude that the trial court correctly found that there was probative and substantial evidence to support the Board's decision, and that the ordinance is not too vague to satisfy constitutional requirements.

I

{¶ 3} In 2008, Moraine Materials filed an application for a conditional use permit for a proposed mineral extraction to the German Township Board of Zoning Appeals. The area from which Moraine Materials wished to extract gravel is an 88.8 acre stretch of farmland zoned for agricultural use. To use the land as a gravel quarry, Moraine Materials applied to the German Township Board of Zoning Appeals for a conditional use permit.

{¶ 4} The plans for the gravel quarry were presented to the German Township Board of Zoning Appeals. They included plans to include a berm or fence to shield the gravel permit from the surrounding area. The plans also called for truck-tire cleaning and for having trucks haul away material two to three times a week. The proposal was that the quarry would operate for about fifteen years, with increased production taking place during the final seven-year stretch. After all the extraction of all the gravel, the plan called for the land to be turned into a park-like setting, with water filling the holes left behind, creating ponds.

{¶ 5} The land for the gravel pit sits on a stretch of roadway dominated by a rural landscape consisting of farmland, a Metropark, and homes. The quarry would be at the entrance to German Township. Several residents living near the site of the proposed quarry expressed concern about the disruption to the overall look of the area, along with possible depreciation in home values, and traffic patterns.

{¶ 6} Moraine Materials went through a "pre-application" process to address and highlight issues with the application. There were no modifications suggested at this time, and the report from the staff stated that there should not be a major impact on the traffic pattern and that the plans for keeping the roads clean were adequate.

{¶ 7} A public hearing was held before the German Township Board of Zoning Appeals to address the issue and elicit the opinions of the public. The hearing was attended by 26 people, including some representatives from Moraine Materials who spoke in favor of the project. Fourteen members of the community spoke in opposition to the proposed zoning change, and presented a petition with 54 signatures, including 41 people who live near the proposed gravel quarry.

{¶ 8} One of the main concerns expressed was the effect of the quarry on home values, one person stating that no one would want to buy a home where the view from the master bedroom was that of a rock quarry. Still others spoke of the noise, dust, and traffic disruption that the gravel quarry would produce. As noted in Moraine Materials' brief, none of these concerns was presented with supporting evidence, just the opinions and concerns of the people there at the time.

{¶ 9} During the discussion, a conservation expert testified concerning the impact

that the quarry would have on the local environment. He stated that the land that the gravel quarry would occupy, as well as the adjacent Metropark, have some of the most biologically diverse and scenic land in the area. He also expressed concern about the impact on Twin Creek, which he described as being one of the top streams for water quality and abundance of fish and wildlife in all of Ohio. Twin Creek is also part of a $6 million conservation effort by the Metroparks.

{¶ 10} One of the citizens in attendance, Mike Osborne, testified concerning the adverse impact the quarry would have upon the overall landscape and scenic beauty of the surrounding area. Osborne testified that given the elevation of the road and the height of the proposed berm, the berm would fail to conceal the gravel pit from the state route leading into the Township. Osborne surmised that the berm would fail to provide adequate cover by about 30 feet. Osborne further testified that if Moraine Materials found further gravel and sand, the mining operation could go on for years longer then the anticipated fifteen to sixteen years.

{¶ 11} Concerning the adverse impact of the gravel pit on the visual aesthetics of the Township, Osborne testified:

{¶ 12} "What you are going to see for the full length of this rural scenic agricultural residential community are mines. You're going to see the gravel mines on your left, the strip mines from the (inaudible) area. You're going to go a little farther up and there's the new Wivel concern up there. You see his processing plant across the tracks. You get near Twin Creek, you can see the Sugar Creek processing plant. You can see their – for the first two miles your impression of German Township is going to be a big gaping hole in the ground where they mine gravel. It's not going to be a scenic view."

{¶ 13} Representatives of Moraine Materials spoke in favor of the project, detailing the truck-tire cleaning, where the wheels would be washed and allowed to dry on an incline before entering the roads. They also stressed that Moraine Materials would be meeting all federal requirements for the equipment that would be used at the site, and that the noise would be minimal.

{¶ 14} After the public hearing, the German Township Board of Zoning Appeals found that it could not conclude that the standards set forth in sections 406.05(C), (E), (F), and (H) of the Zoning Resolutions for German Township had been satisfied by Moraine Materials. Specifically the Board stated that there was not adequate access to roads, or that there would be disruption to current traffic problems; the conditional use would not be in harmony with the appropriate and orderly development of the district in which it is located with respect to its location and size and the nature and intensity of the operation involved or connected to it; and that the project may "adversely affect the public heath, safety, and morals." Finding that the application presented by Moraine Materials did not meet the requirements outlined in section 406.05, the Board denied the application for a conditional use permit.

{¶ 15} Moraine Materials appealed the Board's decision to the court of common pleas. The court affirmed the Board's decision. Moraine Materials appeals to this court from the judgment of the trial court affirming the Board's decision.


II

{¶ 16} Moraine Materials's First Assignment of Error is as follows:

{¶ 17} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING

GERMAN TOWNSHIP ZONING ORDINANCE WAS NOT UNCONSTITUTIONALLY VAGUE. "

{¶ 18} Moraine Materials asserts that the wording of the ordinance is overly vague and therefore unconstitutional. The terms "harmony" and "overly developed" are not defined in the ordinance, and Moraine Materials argues that due to the overly vague wording of the ordinance, the ordinance is unreasonable and arbitrary – the ordinance insufficiently informs the Board's exercise of discretion, permitting it to render arbitrary and capricious decisions.

{¶ 19} We have held that: "[a] zoning ordinance that fails to establish a sufficiently adequate and definite guide to govern officials with respect to grant (sic) of variances, exceptions or permits is void," and "[i]n order to be valid * * * the legislative enactment must set forth sufficient criteria to guide the administrative body in the exercise of its discretion." *In re Elizabeth Twp. Bd. of Zoning Appeals* (September 2, 1994), Miami App. No. 93 CA 62, citing *Hudson v. Albrecht, Inc.* (1984), 9 Ohio St.3d 69, 73-74. *Elizabeth Twp. Bd. of Zoning Appeals*, supra, holds further that: "The power of a township zoning board to grant a conditional use is ultimately derived from R.C. 519.14. This section provides, in relevant part: 'The township board of zoning appeals may: * * * (C) Grant conditional zoning certificates for the use of land, buildings, or other structures if such certificates for specific uses are provided for in the zoning resolution.' *Community Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals* (1993), 66 Ohio St.3d 452, 455. In general, '[t]he decision to deny an application for a conditional use is clearly administrative in nature. It is not a narrowing of a zoning classification that could easily be construed as legislative in character and, therefore, an improper exercise of [the board's] power.' Id. at 455-456." Id.

{¶ 20} Moraine Materials contends that the terms "harmony" and "orderly development" are overly vague within the ordinance, with both terms being undefined within the ordinance. Moraine Materials cites *Perez v. Cleveland* (1997), 78 Ohio St.3d 376, in which the Supreme Court of Ohio, following the void-for-vagueness test set forth in *Grayned v. Rockford* (1972), 408 U.S. 104, 108-109, 33 L.Ed.2d 222, 92 S.Ct. 2294, found that vague laws may trap the innocent by not providing fair warning of what will constitute unlawful conduct. But as the Supreme Court of Ohio recognized in *Perez v. Cleveland*, supra, at 78 Ohio St.3d 378, there is a distinction to be made between statutes prohibiting individual conduct, where it is necessary to provide sufficient notice to the individual of what conduct will be deemed unlawful, and statutes, like the one before us, providing guidance to officials in the performance of their duties, where the sole danger to be avoided is the danger of arbitrary or discriminatory enforcement.

{¶ 21} Older United States Supreme Court decisions have considered the issue of vagueness in a statute or ordinance and held that the standards of the community define the allegedly vague term. Perhaps the most famous of these cases is *Miller v. California*, (1973), 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, wherein the Court articulated a test to determine the meaning of the term "obscene." In *Miller* the first portion of the test requires that the morals of the average person in the local community be taken into account when defining the term. Significantly, *Miller v. California* involved the heightened concern of the possible chilling effect of the statute on free speech, under the First Amendment; whereas the case before us does not.

{¶ 22} In the case before us, the trial court defined the terms in the ordinance by using

a Webster's Dictionary, concluding that the plain meaning of the terms was sufficiently clear to avoid the danger of arbitrary or discriminatory action by the Board. The terms "harmony" and "orderly development" are terms into which a board of zoning appeals can appropriately import the standards of the community. In the case before us, we conclude that the terms of the ordinance provide sufficient guidance to the Board of Zoning Appeals to avoid the danger of arbitrary or discriminatory application.

{¶ 23} Moraine Materials' First Assignment of Error is overruled.

III

{¶ 24} Moraine Materials' Second Assignment of Error is as follows:

{¶ 25} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING A PREPONDERANCE OF RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE TO SUPPORT THE BOARD."

{¶ 26} Moraine Materials contends that the Board of Zoning Appeals did not have a basis to deny the conditional use application. Moraine Materials argues that the application met all requirements of the 406.05 ordinance and should have been granted.

{¶ 27} Under Ohio Revised Code 2506.04, "[i]f an appeal is taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the

cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505 of the Revised Code."

{¶ 28} We have held that:

{¶ 29} "When a court of common pleas is reviewing an agency decision, it must 'determine whether there exists a preponderance of reliable, probative and substantial evidence to support' the decision. *Dudokovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 207 * * * . This does not mean that a trial court can substitute its judgment for that of the agency, particularly when the agency has expertise in the area. Id. Further, the trial court must presume that the agency decision is 'reasonable and valid.' *Community Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals* (1993), 66 Ohio St.3d 452, 456, * * * . Accordingly, if the trial court finds that the agency's decision is supported by a preponderance of reliable, probative and substantial evidence, then the decision must be affirmed. *Dudokovich,* supra.

{¶ 30} "An appellate court, on the other hand, has a much more limited standard of review. When reviewing a trial court's decision regarding an agency's order, the appellate court need only determine if the trial court abused its discretion. *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, * * * . It is well settled that an abuse of discretion exists where the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Montgomery* (1991), 61 Ohio St.3d 410, 413, * * * . Therefore, we must affirm the trial court's decision absent an abuse of discretion." *In re Application for*

*Conditional Use of Watkins* (February 18, 2000), Montgomery App. No. 17723, quoted in *Trent v. German Twp. Bd. of Zoning Appeals* (2001), 144 Ohio App.3d 7, 20.

{¶ 31} "Furthermore, the Supreme Court of Ohio has pointed out that the fact that a reviewing court might have arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for so doing. [Citation omitted.]" *Trent v. German Twp. Bd. of Zoning Appeals*, supra.

{¶ 32} Moraine Materials argues that all of the requirements of the zoning ordinance were met by their proposal; therefore, German Township Board of Zoning Appeals unlawfully denied their request.

{¶ 33} The Board of Zoning Appeals denied Moraine Materials' conditional use application for several stated reasons. The most compelling of the reasons asserted is that because of the height of Route 123, overlooking the proposed site, the berm surrounding the operation would not prevent it from being an eyesore that would compromise the attractiveness of the surrounding area at one of its main entrances. This was testified to by Osborne who rightly pointed out that the berm would fall short of concealing the gravel pit from view by over 30 feet. Section 406.05(F) requires that the "location, nature, and height of any structures, walls, and fences and the nature and extent of landscaping and screening on the site will not unreasonably hinder or discourage the appropriate development, use and enjoyment of the adjacent land, buildings and structures." The Board of Zoning Appeals cites this section as a cause for rejection. Osborne pointed out that the berm would not be sufficient to satisfy this section of the ordinance. The ordinance in question requires that all

of the elements must be met to grant a conditional use application.

{¶ 34} One of the Board's bases for rejecting the application was that the proposed use would not be in harmony with the appropriate and orderly development of the district in which it is located. We conclude that Osborne's testimony is substantial, probative and reliable evidence to support the Board's conclusion in this respect, which was sufficient to support its decision to reject the application.

{¶ 35} Moraine Materials' Second Assignment of Error is overruled.


IV

{¶ 36} Both of Moraine Materials assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.

Copies mailed to:

Mathias H. Heck
Douglas M. Trout
Michael W. Sandner
Hon. Steven K. Dankof