[Cite as *SRM Materials, L.L.C. v. German Twp.*, 2025-Ohio-4605.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| SRM MATERIALS LLC | : | |
| | : | C.A. No. 30419 |
| Appellant | : | |
| | : | Trial Court Case No. 2024 CV 02072 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| GERMAN TOWNSHIP OHIO ET AL. | : | Court) |
| | : | |
| Appellees | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on October 3, 2025, the judgment of the trial court is reversed and remanded for further proceedings consistent with the opinion.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Christopher B. Epley*

CHRISTOPHER B. EPLEY, PRESIDING JUDGE

TUCKER, J., and HANSEMAN, J., concur.

**OPINION**
MONTGOMERY C.A. No. 30419


MICHAEL P. MCNAMEE & NATHANIEL W. ROSE, Attorneys for Appellant
KATHERINE L. BARBIERE, Attorney for Appellee


EPLEY, P.J.

{¶ 1} SRM Materials, LLC ("SRM"), appeals from the judgment of the Montgomery County Court of Common Pleas affirming the denial of its conditional use application by the German Township Board of Zoning Appeals ("BZA"). For the reasons that follow, the judgment of the trial court is reversed, and this matter is remanded to the BZA for further proceedings in accordance with this opinion.

## I. Facts and Procedural History

{¶ 2} SRM owns and operates a sand reclamation facility at 9330 Eckhart Road in German Township, but the company is interested in expanding its operation onto adjacent properties to the west across Butter Street (parcel numbers D14 00814 0021 and D14 00814 0008). On January 12, 2024, SRM filed an application for conditional use with the German Township Zoning Department seeking approval to engage in aggregate extraction on the new land as an extension of its existing facility. The land is zoned as an agricultural district, and the proposed operation is a conditional use of the land.

{¶ 3} In support of its application, SRM suggested that the proposed expansion would have a minimal impact on the neighboring properties, and while its equipment would be closer, SRM proposed that natural barriers that would limit the disruption. To help mitigate potential concerns from residents, SRM planned to limit its activities to approximately 32 acres at the southwest corner of the property. According to the company, "the proposal keeps all activities associated with the sand reclamation to either meet or exceed the

township's Zoning Resolution." SRM warned that without the expansion, the community would be limited in the amount of construction materials available to it.

{¶ 4} Prior to the BZA hearing, SRM provided the township with its completed application and the required additional documents, and the BZA scheduled a hearing on the application. At the March 12, 2024 hearing on the application, no one from SRM showed up to testify, purportedly due to a scheduling error. No community member spoke in favor of the project. On the other hand, many community members and neighbors of the properties testified in opposition.

{¶ 5} One alleged issue was noise pollution. Michael Osborn, who lives in an adjoining property, noted that the dredging operation is 4,000 feet from his house, but the noise, vibrations, and rumbling of the trucks and equipment are clearly audible and intrusive. He indicated that the new operation, which would be even closer, would add to the din. Rhonda Leigeber stated that the current operation creates noise from 7:30 a.m. until after 8 p.m., and she believed that the expanded operation would only make matters worse.

{¶ 6} Another major concern expressed by almost every citizen at the hearing was traffic and its impact on the roads. Several spoke about the high volume of "big truck" traffic on Butter Street and the fact that it has virtually destroyed the road, making travel dangerous. According to James Rowland, "cars get flat tires in front of my house all the time because of the roads—the berms of the roads are getting tore up and people, if they run over those, it busts their tires. It's a safety issue." Hearing Tr. 50. Another person explained that he avoids Farmington Road and Butter Street because of the poor road conditions and that he cannot ride his motorcycle in the area because it is too dangerous. Another resident introduced photographs purporting to show road damage on State Route 123 and Butter Street from

SRM traffic. Still another individual told the BZA that because of the number and speed of the trucks on Butter Street, he has concerns about children getting hurt.

{¶ 7} The citizens were not the only ones with concerns about the impact of the proposed project on the roads; German Township Road and Service Administrator Jeremy Holbrook had them, too. His official report outlined several concerns: (1) Butter Street lacks the structure to support the heavy traffic that SRM produces daily. The additional heavy traffic transporting gravel from the new location to the processing facility will cause even more damage; (2) the addition of a mining operation at the new location will increase traffic on Eckhart Road; and (3) SRM has made no effort to repair any of the damage caused by their equipment. Holbrook emphasized that Sugar Street is in extremely bad shape—with the berm being at least a foot higher than the roadway due to sediment buildup—and that the intersection of Butter Street and SR 123 has constant potholes due to heavy trucks. He concluded that "[t]he damage that could be caused by this operation will be extremely difficult to budget for." Pictures of the roadways accompanied Holbrook's report.

{¶ 8} Residents also worried about air and water pollution. Testimony indicated that the prevailing wind blows dust and debris into a nearby neighborhood and Leigeber told the BZA that the current facility's operation limits the days she can open her windows due to dust. She also said that as a nurse, she worries about the long-term exposure to particulates from the plant. Finally, she expressed concern that the proposal would "disrupt the existing movement [of the] surface and groundwater and interrupt the natural water recharge . . . reduc[ing] the quantity and quality of the drinking water." Hearing Tr. 55. Gary Stemp, who stated that he lives next door to the facility, said that he "worried about the water because my well is only 15 feet deep. And I'm right beside the property that they're doing. If they go down further than that, they're going to be right into my water." Hearing Tr. 69.

{¶ 9} Another worry that ran through the meeting was the residents' concern about the project's potential impact on the beauty and rural character of the area. Osborn mentioned that because the surrounding homes sit at a higher elevation, the mining operation, even with a ten-foot berm and other screening, is still an eyesore. Tyler Remert opined that SRM's proposal to keep the current vegetation barrier to screen the site is meaningless half of the year because between November and March, the trees and other vegetation have no leaves. Others described how they anticipated the proposed facility would affect views from the nearby park. Brent Anslinger asserted that granting the conditional use would "negatively impact the rural characteristics of the neighborhood in a drastic and impactful way." Hearing Tr. 39. He testified that the new facility would negatively impact the views from Twin Creek MetroPark and the High View shelter, which he called a "gem of Montgomery County." Hearing Tr. 40.

{¶ 10} Finally, residents questioned the impact that SRM's new facility would have on their property values. Osborn cited a study that showed the property values of the surrounding homes have gone down 15 to 30 percent since the original SRM facility opened. Rowland posited that years ago, following the land's transition from farmland to a gravel pit, the value of the land had plummeted, resulting in less tax revenue.

{¶ 11} After hearing the public comments, the BZA entered executive session to deliberate. The BZA was guided by Article 4, Section 406.05 of the German Township, Montgomery County, Ohio Zoning Resolution pertaining to conditional use certificates. Under this section:

> The Board shall not grant a Conditional Use unless it shall, in each specific case, make specific findings of fact directly based upon the particular evidence presented to it, that support conclusions that:

A.   The proposed Conditional Use will comply with all applicable regulations of this Resolution, including lot size requirements, development standards and use limitations.

B.   Adequate utility, drainage and other such necessary facilities have been or will be provided.

C.   Adequate access roads or entrance and exit drives will be provided and will be so designated as to prevent traffic hazards and to minimize traffic conflicts and congestion in public streets and alleys.

D.   All necessary permits and license[s] for the use and operation of the Conditional Use have been obtained, or evidence has been submitted that such permits are obtainable for the proposed Conditional Use on the subject property.

E.   The Conditional Use will be in harmony with the appropriate and orderly development of the district in which it is located with respect to its location and size and the nature and intensity of the operation involved or connected with it.

F.   The location, nature, and height of any structures, walls, and fences and the nature

G.   and extent of landscaping and screening on the site will not unreasonably hinder or discourage the appropriate development, use and enjoyment of adjacent land, buildings, and structures.

H.   All exterior lights for artificial open-air illumination are so shaded as to avoid casting direct light upon any property located in a Residential District.

I.      The Conditional Use desired will not adversely affect the public health, safety, and morals.

{¶ 12} The record shows that each of the Section 406.05 standards was considered, and the BZA found that none could be met. Therefore, SRM's conditional use permit application was unanimously rejected. The company appealed to the Montgomery County Court of Common Pleas. After considering the transcript of the BZA hearing and briefs from both sides, the trial court affirmed the BZA's decision.

{¶ 13} SRM has filed a timely appeal that features a single assignment of error.

## II.    Application for Conditional Use

{¶ 14} In its assignment of error, SRM argues that the trial court erred as a matter of law when it affirmed the BZA's decision to deny the conditional use application for the extraction of minerals. We agree.

<u>Standard of Review – Administrative Appeals</u>

{¶ 15} When an appellate court reviews a decision by the common pleas court regarding an agency order, the appellate court utilizes two distinct standards of review. On a question of fact, our review is limited to an abuse of discretion. *Key Ads, Inc. v. Dayton Bd. of Zoning Appeals*, 2014-Ohio-4961, ¶ 13 (2d Dist.). On a question of law, however, the review is de novo. *Id.*, citing *Ohio Dept. of Commerce, Div. of Real Estate v. DePugh*, 129 Ohio App.3d 255, 261 (4th Dist. 1998). Because the outcome of this case depends on the interpretation of statutes, the proper standard is de novo. *Dayton v. Johnson*, 2021-Ohio-3519, ¶ 25 (2d Dist.) ("The interpretation of a statute is a question of law, which we review de novo.").

Township Regulations

{¶ 16} Ohio townships do not have any inherent or constitutionally granted police power, the power from which zoning legislation is derived. *Bainbridge Twp. Bd. of Trustees v. Funtime, Inc.*, 55 Ohio St.3d 106, 108 (1990), quoting *Yorkavitz v. Columbia Twp. Bd. of Trustees*, 166 Ohio St. 349, 351 (1957). "'Whatever police or zoning power townships of Ohio have is that delegated by the General Assembly, and it follows that such power is limited to that which is expressly delegated to them by statute.'" *Id. Accord Apple Group, Ltd. v. Granger Twp. Bd. Of Zoning Appeals*, 2015-Ohio-2343, ¶ 6 ("In Ohio, the authority of a township to enact zoning ordinances derives not from the township's inherent authority or the Ohio Constitution, but from the General Assembly.").

{¶ 17} An Ohio township's authority to promulgate regulations related to land use comes from R.C. 519.02. It states: "[I]n the interest of the public health and safety, the board of township trustees may regulate by resolution . . . the uses of land for trade, industry, residence, recreation, or other purposes in the unincorporated territory of the township." R.C. 519.02(A). The statute, however, places restrictions on township trustees' ability to adopt such regulations; townships are permitted to further specified interests, including "'public health and safety'" and "'public convenience, comfort, prosperity, or general welfare.'" *Columbus Bituminous Concrete Corp. v. Harrison Twp. Bd. of Zoning Appeals*, 2020-Ohio-845, ¶ 4, quoting R.C. 519.02(A).

{¶ 18} As relevant to this case, a portion of R.C. 519.02(A) applies to mining operations governed by R.C. Chapters 1513 (coal mining) and 1514 (surface mining). *Id.* at ¶ 5. It states: "For any activities permitted and regulated under Chapter 1513 or 1514 of the Revised Code and any related processing activities, the board of township trustees may

regulate under the authority conferred by this section **only in the interest of public health or safety**." (Emphasis in original.) *Id.*, quoting R.C. 519.02(A).

Analysis

{¶ 19} SRM contends that the trial court erred as a matter of law by affirming the BZA's denial of the conditional use application. According to SRM, the BZA's decision was based on the German Township general standards and not solely on the basis of public health and safety. Our analysis is guided by an almost identical Ohio Supreme Court case.

{¶ 20} In that case, the Harrison Township BZA (Pickaway County) denied the application for a conditional use permit to conduct sand and gravel mining of Columbus Bituminous Concrete Corporation ("CBCC") because the request did not comply with the general standards of the township's zoning resolution. *Columbus Bituminous Concrete Corp.*, 2020-Ohio-845, at ¶ 15. The standards required, among other things, that the use be harmonious with the surrounding area and not detrimental to the general welfare due to noise, traffic, or other factors. *Id.* at ¶ 12. The Harrison Township BZA, though, did not make detailed findings of fact or explain how the standards related to the health and safety of the public, and ultimately denied the conditional use application. *Id.* at ¶ 15. The BZA stated only that CBCC "'was unable to affirmatively prove all the requirements of [the General Standards contained in] the Harrison Township Zoning Resolution.'" (Citation omitted in original) *Id.* It provided no explanation of the facts supporting that conclusion. *Id.*

{¶ 21} The case was then appealed to the Pickaway County Court of Common Pleas, and the trial court affirmed. *Id.* at ¶ 16. It held that the BZA appropriately required CBCC to demonstrate compliance with the zoning resolution's general standards and that the BZA was correct when it found that the applicant had provided insufficient evidence of its proposal's compliance with those standards. *Id.*

{¶ 22} The Supreme Court saw things differently. It concluded that the Harrison Township BZA's denial of the conditional use application violated R.C. 519.02(A) by relying on the general standards of the township zoning resolution irrespective of whether compliance was in the interest of public health and safety. *Id.* at ¶ 28-29. The Court further held that even when general standards of a township zoning resolution are applied in the interest of public health and safety relative to a conditional use application for mining activities, they may be used only as conditions for approving the application, not as reasons for its denial. *Id.* at ¶ 28.

{¶ 23} We have essentially the same scenario in this case. According to the record, the rejection of SRM's conditional use permit was based on the BZA's finding that the application failed to meet any of German Township's general zoning standards. Similarly, the trial court based its decision to affirm on the BZA's analysis of those standards.

{¶ 24} Nevertheless, on appeal the BZA argues that R.C. 519.141 gives it the ability to "require as a condition of the approval of a conditional zoning certificate . . . compliance with any general standards contained in the zoning resolution that apply to all conditional uses that are provided for in the zoning resolution[.]" Appellant's Brief, p. 10. However, the Supreme Court has specifically held that "R.C. 519.141(A) does not provide a board of zoning appeals with a basis for *denying* an application to engage in mining when the application fails to meet a township's general conditions." (Emphasis in original) *Columbus Bituminous Concrete Corp.*, 2020-Ohio-845, at ¶ 27.

{¶ 25} The BZA appears to argue that R.C. 519.141(A) allows it to require certain conditions for approval, such as (1) inspections of nearby structures and water wells to determine structural integrity and water levels; (2) compliance with applicable federal, state, and local laws and regulations; (3) identification of specific roads to be used as the primary

means of ingress to and egress from the proposed activity; (4) compliance with reasonable noise abatement measures; (5) compliance with reasonable dust abatement measures; (6) establishment of setbacks, berms, and buffers for the proposed activity; (7) establishment of a complaint procedure; and (8) any other measure reasonably related to public health and safety. Even assuming this were true, the BZA did not do that. It looked at only its own general standards, found that SRM's application did not meet them, and then rejected SRM's conditional use application.

{¶ 26} The BZA also claims that SRM cannot challenge its ruling because SRM did not participate in the hearing. We disagree because it is not factually true that the company was not there. The hearing transcript reveals that an agent from SRM was present, and when asked, she identified herself as such. Although it is true that the representative who was supposed to speak at the hearing was absent (SRM asserts a scheduling error caused his lack of attendance) SRM was indeed represented. Further, we find the cases the BZA cites to support its position in this regard are unpersuasive because they deal with third parties challenging township decisions. For instance, in *Roper v. Bd. of Zoning Appeals*, 173 Ohio St. 168 (1962), the challenge was from a resident and property owner in the township, not the applicant. The same goes for *Capital L. Corp. v. Cleveland Bd. of Zoning Appeals*, 2000 WL 504109 (8th Dist. April 27, 2000), where appellants were a landlord and tenant of a nearby property.

{¶ 27} Finally, we noted the reliance of the trial court and the BZA, during its hearing, on *Moraine Materials Co. v. German Twp. Bd. of Zoning Appeals*, 2011-Ohio-2074 (2d Dist.), as an analogous case supporting the rejection of SRM's application. Although *Moraine Materials* seems to lend credence to the decisions in this case, it was decided nearly a decade before *Columbus Bituminous Concrete Corp.* and is no longer precedential.

{¶ 28} Because the BZA relied on the general standards under Article 4 of the German Township zoning resolution to deny SRM's conditional use permit, we must conclude that the trial court erred in affirming the board's decision. Accordingly, SRM's assignment of error is sustained.

### III. Conclusion

{¶ 29} We reverse the decision of the trial court and remand the case to the BZA for reconsideration of SRM's conditional use application. On remand, the BZA shall consider SRM's conditional use application based on the evidence already in the record, the provisions of the Revised Code, and the terms of the township zoning resolution. Consistent with this opinion, the board must ensure that resolutions adopted pursuant to the powers granted in R.C. 519.02(A), including the general standards in Article 4 of the zoning resolution, are applied to SRM's application only to the extent doing so is in the interest of public health and safety. If, upon applying the general standards in the interest of public health and safety to SRM's application, the BZA finds that public health and safety concerns are raised, it may address those concerns only through conditions on an approved application.

. . . . . . . . . . . . .

TUCKER, J., and HANSEMAN, J., concur.